May it please the Court, Amy Baggio appearing this morning on behalf of the Petitioner-Appellant William Pierce Mills. I would like to reserve two minutes for rebuttal. I would like to start this morning with the Schlepp decision's fundamental miscarriage of justice exception to default. That exception requires Mr. Mills to demonstrate a constitutional violation has probably resulted in the conviction of someone who's actually innocent. Now can I stop you right there, and I apologize, but I found this case very challenging and complicated on procedural grounds, and I had some preliminary questions right at that point on this actual innocence. You cite two different organ statutes, the guilty except insane statute and the diminished capacity statute, and I'd like your help in understanding whether either of those are actual innocence. I know with guilty except insane, the decisions, the organ decisions I read suggest it requires incarceration. It could be a conviction for some purposes. And then for the diminished capacity statute, my concern was does the underlying crime, did the government have to prove that the defendant knew his actions were unlawful, because that's the point which you say he didn't have the capacity to form the intent to do something unlawfully. So could you address this actual innocence in the context of the organ statutes? Yes, Your Honor. I'd like to start with the diminished capacity defense first. That is an affirmative defense that negates the intent element, and therefore the person is not guilty of the offense. And is the intent under, I think it's 166.220, that he was convicted, that he had to know that his actions were unlawful, because I believe your theory is that he thought he was, he wanted to implement a valid citizen's arrest. That's correct, Your Honor. It's actually a specific intent crime. He must intend to use unlawfully. It's possession with a specific intent to use unlawfully. And it is on that element that I believe that we have proven conclusively that his every intent was to use lawfully, although in his diminished capacity he believed he was acting lawfully, which we submit in light of the full evidence here that that's proven. And what tells you that that's a specific intent crime? Is there a Oregon case, or is it just looking at the language of the statute? I was looking at the language of the statute specifically, Your Honor. And I don't recall whether there was a case on that. I would be happy to submit a supplemental brief on that if the Court has a concern about it. But I do believe that the – and I'll look also in terms of while opposing counsels my understanding of the law is that the State must prove that Mr. Mills acted with intent to use the weapon unlawfully, which makes the possession illegal. And as opposed to the guilty except for insanity affirmative defense, which was Your Honor's other question, and that is certainly a wholly distinguishable creature because the person is first found guilty of all the elements, and only then does the Court consider whether they are going to find him criminally responsible or not based on a mental health defense. So both are affirmative dispenses under the Oregon statutes, but they do certainly operate differently. Under diminished capacity, the person is never found guilty of all the elements. Under GEI, they are. Okay, so you're – I'm sorry, go ahead. Go ahead. Just to clarify, you're focusing on the diminished capacity? I believe and Dr. Welch believes that both apply, but I think that diminished capacity is – certainly we don't need to reach the questions about whether an Oregon conviction under GEI constitutes a conviction for these purposes because Mr. Mills clearly wins under the diminished capacity defense. You mentioned, Ms. Baggio, that all the evidence shows that he was intending to effect a lawful arrest of the people that he suspected had been stealing from the Social Security Agency. Number one, under Oregon law, is it required to effect a citizen's arrest that the citizen see the crime committed? Not to my knowledge, Your Honor. Actually, I'm sorry, the statute does require that. That's correct, yes. He didn't see them stealing stuff. He did believe that in – He believed, but he didn't see them stealing anything, correct? May I – Your Honor, he didn't see them stealing, but what his job at the Vocational Rehabilitation Division's services was, was reviewing paperwork, and he believed that that paperwork showed that these individuals had diverted funds illegally to themselves. Secondly, you said all the evidence showed that he merely wanted to arrest these people and bring them to justice. What do we do with the evidence that he was carrying six, I believe it was, Molotov cocktails? A Molotov cocktail is used to arrest? Do you have any cases that say that it is a useful arm to arrest a person to use a Molotov cocktail? Your Honor, no. And I think that there's an important distinguishing characteristic here. Mr. Mills was not convicted of the illegal possession of an explosive device. That charge was dismissed. That's correct. But we're going to his intent. Yes, sir. His diminished capacity. In California, we've eliminated that, but in Oregon, we still have it, right? Now, he didn't have the capacity to form an intent to harm these people, but he was carrying Molotov cocktails. Aren't Molotov cocktails harmful to people? Your Honor, if we look to what Mr. Mills said that he was doing with them, he claimed he was possessing the camping fuel and diapers because he was going camping. I understand that his wife told the police officer that he said to her he needed to make Molotov cocktails. So there is conflicting evidence in terms of Mr. Mills' own, albeit delusional, statements as to what he was doing. But I think also another important consideration is in the property that was taken from the backpack upon his arrest, along with the camping fuel, was a camping permit, which is also in the record, Your Honor. I'd be glad to get that citation. So there is evidence to also suggest that he was using the camping fuel and diapers. Now, if there is evidence one way or the other under the Schlupp v. Dello case, you have to prove, in order to excuse your non-exhaustion, that no reasonable juror could find other than innocence. And when there is evidence on both sides, can we say that? Well, Your Honor, yes, we can, because the standard is whether it's more likely than not that no reasonable juror would convict. And here, what I think the Court is missing is the import of Mr. Mills' mental illness in possessing the whatever the materials that the Court said were for Molotov cocktails. The camping fuel was possessed, along with all the other items, because he had become delusional and obsessive about arresting these people. And the record shows that he was very open in discussing with law enforcement authorities his own, what he perceived to be his own personal safety at risk and that of his family, and under the Oregon private citizen's arrest statute, it does provide that a person can use force as allowed to defend the person's own premises in arresting another individual. Again, I'm not suggesting that he was making a reasonable decision in so doing, but for this very bright, very articulate man to have this statute in his possession and to look at the way he was looking at the whole world at that point in time, I think it's clear that unlike what the trial court said, which was with Mr. Mills, hey, you didn't have a right to arrest, you didn't have probable cause to arrest these people, he didn't. But the whole point is that he suffered from mental illness that made him think that he did, and that's what the judge didn't get to know. The mistake of law or a mistake of fact admissible to show that arrest was legal? Your Honor, the diminished capacity defense would have negated that element altogether. Let me ask you this. This is a tricky case. You clearly stated the standard under Schlapp and House correctly, which is to say it's more probable than not that no juror would have and so on. What do we do with our basic, at least I think it's our basic common knowledge, that jurors are suspicious of diminished capacity and insanity defenses? And for good reason, defense lawyers are a little worried if that's the only thing they've got. So if I'm trying to figure out, I've got a jury here and it's got to be more probable than not that none of them will reject the diminished capacity defense, what do I do with my sort of background knowledge that jurors basically don't like that defense? Well, Your Honor, the jury would be instructed as to the law and they would agree to follow it. And the law here provides that that would negate the intent element. And I think what's different in this case, too, than any other case I've seen, is the extent of the evidence and severity of mental illness here. So we don't have someone who just, you know, at trial time starts talking to himself. No, the evidence of mental illness is clearly here. We have a man, a deeply troubled man, no question. If there are no further questions, thank you. Well, there is one question. With respect of his intent, what do you do with the statement by Mr. Tran that Mr. Mills became somewhat upset or obsessed about getting back at people at work? Does that indicate that he wanted to hurt them rather than arrest them? No, Your Honor. And I think the other evidence that we provided in the record shows that what Mr. Mills' intent was, he talked about suing them. In the letters that he mailed to them, he talked about suing them and ordering them to cease and desist in their unlawful activities. In his interview with the Oregon State police officer, the police officer said... You don't need guns and Molotov cocktails to sue. I understand, Your Honor. But he possessed those guns, I think, not to sue them, but because he believed that they threatened his health and safety and that of his family in his diluted state. And if you look at the interview with the Oregon State police officer, when the police officer is, I can almost picture him talking to this gentleman at length, and Mr. Mills is so articulate and so bright and talking about the different legal standards, and at some point the Oregon State police officer says, so if we investigate this and find that there's no wrongdoing, you're okay with that. And Mr. Mills says, yes, I just want you to do your job. I want you to investigate, and if you do that, I'll be fine. And that's what never happened, at least from Mr. Mills' perspective. May it please the Court, Caroline Alexander, for Respondent Gene Hill. I don't want to spend a lot of time on actual innocence, because I would like to talk about deference and the merits of this trial counsel claim. I think we need to clarify some issues regarding the actual claim, even if this Court finds that Petitioner has met the requirements of actual innocence. The State believes he hasn't, but that's well set out in the brief. Yeah. You mean actual innocence in the sense of getting us past the failure to adjust the claim. A gateway claim. Yes, Your Honor. A couple of points before I get there, however. Judge Ikuta, Oregon is not a specific general intent State. It's a model penal code State. And you can find the definition of intent in Oregon Statute 161085, sub 7. And what that statute says is, intentionally or with intent when used with respect to the result or to conduct described by the statute means that a person acts with a conscious objective to cause the result or to engage in the conduct so described. So that's the definition of intent in the possession statute. So you understand that if the diminished capacity defense negates the unlawfulness that that would eliminate that element? Yes, Your Honor. And I think that that would indeed establish actual innocence because there wouldn't all of the elements of the crime wouldn't be met. I don't feel that that's true of the affirmative defense of actual innocence or, excuse me, insanity, of course, because all the elements have to be met and, in fact, it's a conviction under State law per the Oregon Supreme Court. Thank you. The second point goes to both actual innocence and the merits of the claim. And that is, I think, Judge Fletcher, as you point out, this is a deeply troubled man, and there's no doubt that he would meet the first prong of the defenses, which is mental disease or defect. There's dispute over what his diagnoses are, but he certainly has a diagnosis that probably would be sufficient under Oregon law. The problem is that second prong of both those statutes. Intent, as a result of mental disease or defect, he couldn't form the intent as just defined by the statute. For insanity defense, he couldn't have appreciated the criminality of his conduct or conformed his conduct to the requirements of the law. It's those – it's that second prong that the problem comes in. I would refer the Court to the trial court's findings. And that's set out in the red brief. But what the trial court did specifically was consider all of those psychological and psychiatric evaluations from the Oregon State Hospital. The Court considered those evaluations that were submitted on the competency issue, but then proceeded to find that the crimes were premeditated, they were carefully planned. Now, was that at sentencing or was that at the – because I saw at the liability stage, I saw that there were stipulated facts and there didn't seem to be evidence of his mental state during the trial phase. What was before the trial judge as opposed to at sentencing? Well, I think before the trial judge at the conviction stage were the psychological evaluations because the court had determined competency. Competency to stand trial. Correct. Correct. So the mental defenses weren't at issue, but the court still had access to those evaluations from Oregon State Hospital. And that's how it works in Oregon courts, is when a trial court decides that a defendant needs to be evaluated for competency and sends him to the State Hospital, State that you see in the record. And there are several of them from Oregon State Hospital. So I think all of that information was before the trial judge. Trial judge clearly said, you know, you have a mental illness, you use that as an excuse, but I still find intent. And that – the factual findings that underlie that finding of intent are entitled to deference regarding the merits. But I still think it goes to the total picture, all of the evidence supporting an actual innocence claim. But I think Judge Bea has a good point, and that is the evidence in the record is not simply that Petitioner wanted to arrest his coworkers. What he consistently said, I'll either arrest them or I will do them in. I will use these weapons if I have to. And Petitioner ignores that other body of evidence that doesn't support either an actual innocence defense or the merits of his claim. And I think that's exactly what trial counsel felt constrained by, was not only the expert opinions, which he was entitled to rely on at the time he formed his decision, but also the fact that this evidence showed that he had this intent to kill these people if needed because of whatever obsessive, I don't know, the experts declined to find that he was delusional. They said that he had no delusions, but that he had this obsessive thinking, paranoid thinking about whatever had occurred with his coworkers. Can you help me on those two points? Now, I know in the aid and assist report they said after he was on the medication then he was competent to stand trial. But that didn't go to what his mental state was during the commission of these offenses or when he was off the drugs. And so I'm wondering whether the trial court had the information about his mental state when he was committing those offenses. My other question is that when I looked at the record I saw that he said, I'll use weapons if these people resist arrest as opposed to I intend to do them in. So maybe you could point me to those points in the record. Okay. I think the first, your first point, Your Honor, I would look on sealed excerpts of record 149. And this is a report when, from the Oregon State Hospital by Dr. John Meyer, when Petitioner was first admitted to the hospital. So he wasn't medicated. This was, this is as close to the crime as we get in terms of some sort of evaluation of psychological state. And there it's 149 and 150. Dr. Meyer diagnosed him with generalized anxiety disorder with a rule-out diagnosis of paranoid delusional disorder. So Dr. Meyer recognized there was some paranoia, potentially some delusions in this. But he also says on 149, his thought structure is organized and coherent. He denies hallucination. There is no evidence of delusions. So that's three weeks after, about three weeks after the commission of the crime. So I think that's, that's what we know at that point, is that's not supportive of either lack of intent or. I'm sorry, Your Honor. I completely lost your second point. The, his threats that he was going to, that he intended to kill his coworkers. Your Honor, I'd refer you to the red brief at page 25. And that's a discussion of actual innocence. But it lays out all of the evidence that the trial court considered in finding him guilty after the stipulated facts trial. And it points to the parts of the record where you could find that, that evidence. So again, evidence that he was going to do these folks in and that he would put a gun to their head and he would die in a blaze of glory with the police if necessary. I have limited time left, so if I can just make a couple of points about deference. Petitioner says that the lack of intent defense was not raised in post-conviction. That is not true. At ER 108, and the red brief does not do a very good job of pointing that out, and I apologize. But that's the post-conviction petition where, in fact, he does raise the trial counsel's failure to raise the lack of intent or diminished capacity defense. So the post-conviction court did consider that claim. The post-conviction court did make a factual finding, which is Petitioner failed to prove any of the allegations in the petition. That is a factual finding that's entitled to deference. The other point about deference I would make is Petitioner submits a ton of new evidence, including Dr. Welch's report, police reports, his brother's affidavits. That's all new evidence. None of that evidence was before the post-conviction court. Post-conviction courts considered the evaluations from the State Hospital, and I think those are contained primarily in the pre-sentence investigation report and Dr. Reikland's final report on competency to the trial court. So that's the only evidence that this Court can consider to decide if the post-conviction court was reasonable in deciding that trial counsel was not ineffective for failing to raise these defenses. So under 2254e2, he has not shown the requisite due diligence. He could have submitted all of that to the post-conviction court and did not. And this Court's constrained by ADEPA's requirements that he showed due diligence and that the post-conviction court's decision is reasonable. And again, I would add also that the trial judge's findings on premeditation planning also is entitled to deference, because those are also factual findings under 2254e1. My time is up. No further questions? Thank you. Ms. Baggio. Let's give you a minute and then see what happens. Thank you. Your Honor, the State submits that Mr. Mills cannot prove diminished capacity or both prongs of the GEI defense. Dr. Welch, the only doctor to have looked at the complete medical records, concluded to the contrary. The State offered no evidence to impeach Dr. Welch's method or to impeach his ability to evaluate this evidence. I believe that we have submitted more than sufficient evidence to establish both the diminished capacity defense and guilt except for insanity. Secondly, the State has continued to submit that there is no evidence of delusions. I completely disagree with that. And I think that even if we look at the sealed excerpt of record, page 242, the victim's petition to have Mr. Mills civilly committed, they spoke at length about Mr. Mills' delusions, paranoia. Even the State's own witnesses would have testified, had counsel done his job, to bring out all of the delusions that Mr. Mills had, specifically regarding what he thought his coworkers did. And lastly, regarding deference under the AEDPA, House v. Bell has addressed exactly the State's claim about the applicability of E-2 after a petitioner passes through the Schlupp gateway. There is no applicability of E-2 once a petitioner passes through the Schlupp gateway. That's on the question of whether or not you can pass through Schlupp. Once you pass through Schlupp, then you address the merits of the claim. And she's arguing with respect to the merits of the claim, assuming we pass through the gateway. Assuming we pass through the gateway, what we are then doing, Your Honor, is something that I would believe is completely illogical, and that is to defer to a State court decision that lacked the proper factual foundation. Once we have the ineffectiveness, every ineffectiveness claim is very much fact-based. And Mr. Mills did not develop the facts whatsoever at the State post-conviction trial court. It was only very, very limited evidence compared to what this Court has before it today. And I believe that's a distinction that makes every difference. Thank you very much. Thank both sides for a very useful argument. The case of Mills v. Hill is now submitted for decision. We'll take a 10-minute break, and then we'll be back for the last two cases.
judges: Wardlaw, Fletcher W. , Bea